**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HEALY LONG & JEVIN, INC.,**<br>*Plaintiff,*<br><br>**v.**<br><br>**CQSA CONSTRUCTION, LLC d/b/a POST GENERAL CONTRACTING, LLC. and BKV GROUP DC,**<br>*Defendants.* | **CIVIL ACTION**<br>**NO. 25-3156** |

**Baylson, J.** **August 18, 2025**

**MEMORANDUM RE: MOTION TO DISMISS**

Plaintiff Healy Long & Jevin, Inc. ("Healy"), a construction company, brings claims for breach of contract, unjust enrichment, negligent misrepresentation, and violation of the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA") against Defendants CQSA Construction, LLC ("CQSA"), doing business as Post General Contracting, LLC ("Post"), and BKV Group DC following work on a construction project. Healy filed its First Amended Complaint on July 1, 2026, adding Defendants Matthew Pestronk and Michael Pestronk ("Individual Defendants" or "Pestronks"). The Pestronks filed a Motion to Dismiss on July 15, 2026. For the reasons below, the Pestronks' Motion to Dismiss will be **GRANTED** and Count V of the Amended Complaint will be **DISMISSED** with leave to amend.

## I. FACTUAL ALLEGATIONS[1]

On November 19, 2021, Plaintiff Healy and Defendant Post[2] entered a written contract to perform construction work (hereinafter "Contract") for a project located at 1001-29 South Broad

[1] For purposes of this Motion, the Court accepts as true all factual allegations in the Complaint. Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020).
[2] Healy alleges that Post entered the Contract and later assigned its rights, title, and interest in the Project to CQSA after the completion of Healy's work. Compl. ¶ 11, ECF 1.

Street and 1301 Washington Avenue, Philadelphia, Pennsylvania (the "Project"). Am. Compl. ¶ 11, ECF 48. Post was the Project's general contractor. Id.

Throughout the Project, Post represented to Healy that the Project should follow the Project Schedule. Id. ¶ 17. However, Healy experienced significant delays caused by Post and its agents, id. ¶¶ 22–23, which disrupted the Project, extended Healy's performance period, and reduced efficiency—resulting in damages of $13,948,769.30. Id. ¶¶ 25–26. Moreover, despite Healy's performance, Post has refused to pay Healy the Contract's outstanding balance. Id. ¶ 21.

Michael and Matthew Pestronk, the Individual Defendants, were the owners, members, principals, officers, and/or directors of CQSA and Post, with the authority to make decisions on behalf of those entities. Id. ¶ 28. On information and belief, Healy alleges that the Pestronks commingled corporate and personal funds, and used those funds for personal benefit such as renovations at their personal residences, resulting in undercapitalization. Id. ¶¶ 31–34. At one point, the Defendants asked Healy to execute a financing agreement in connection with the Project. Id. ¶ 35. Another civil action in the Philadelphia Court of Common Pleas involves claims against the Pestronks by another allegedly unpaid subcontractor on the Project, wherein that subcontractor alleges the Pestronks used corporate funds for personal benefit, commingled funds, and misused the corporate form to undercapitalize Post. Id. ¶ 38; see also, Apollo Contractors LLC, et al. v. Post General Contracting LLC, et al, August Term 2025, No. 250802742 (C.P. Phila. Civ. Trial Div.).

## II. PROCEDURAL HISTORY

On June 20, 2025, Healy filed a Complaint asserting claims for breach of contract, unjust enrichment, and violation of the CASPA against CQSA, and a claim for negligent misrepresentation against BKV. Compl., ECF 1. Following a stay for mediation, (ECF 33), Post

answered the original complaint on April 24, 2026, bringing counterclaims. ECF 42. On June 26, 2026, Healy moved for leave to file an amended complaint to add claims against the Pestronks. ECF 46. In addition to the four claims against corporate defendants, Healy alleged "piercing the corporate veil/alter ego liability" against the Pestronks as Count V of the First Amended Complaint. ECF 48 ("Am. Compl.") ¶¶ 85–91. On July 15, 2026, the Pestronks filed the instant Motion to Dismiss Count V of the Amended Complaint. ECF 54 ("Mot."). On July 29, 2026, Healy filed a Response in Opposition to the Pestronks' Motion. ECF 56 ("Opp'n"). On August 5, 2026, the Pestronks filed a Reply in further support of their Motion. ECF 59.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," id. at 678 (citation omitted). Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## IV. DISCUSSION

### A. Parties' Contentions

The Pestronks move to dismiss the claim against them, arguing that an LLC is an entity whose liabilities should not pass to its owners or operators absent a strong showing that the

corporate form has been misused, and Healy has not alleged sufficient facts to support piercing the corporate veil. Mot. at 1. Instead, the Pestronks argue Healy has only recited the legal elements of veil-piercing without particularized facts. Id.

Healy responds by arguing that it has sufficiently alleged who controlled the entities, what they did with corporate money, what records the corporate officers failed to keep, and what became of the entities' capital. Opp'n at 2. Further, Healy argues the Motion relies on authorities decided at the summary judgment stage and none of its authorities support dismissal with prejudice at the pleadings stage. Id.

**B. Piercing the Corporate Veil**

Under Pennsylvania common law, an LLC or corporation is a distinct and separate entity from its stock owners, but "when persons and entities establish corporations or LLCs, they 'are not free to blur the lines of the capacity in which they act as it may suit them.'" In re Dravo LLC-Derivative Claims Against Carmeuse Lime, Inc., 357 A.3d 104, 118 (Pa. 2026) (quoting Mortimer v. McCool, 667 Pa. 134, 160 (2021)). However, there is "a strong presumption" against piercing the corporate veil by exposing corporate officers to liability based on the obligations of the corporation. Advanced Tel. Sys. v. Com–Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1277–78 (Pa.Super.Ct.2004); see also Lumax Indus. v. Aultman, 543 Pa. 38, 669 A.2d 893, 895 (1995) (this presumption applies even when the stock of the corporation is owned entirely by one person). "Nevertheless, a court will not hesitate to treat as identical the corporation and the individuals owning all its stocks and assets whenever justice and public policy demand." Advanced Tel., id. at 1278 (internal quotation omitted). In Pennsylvania, courts generally apply a "totality-of-the-circumstances test" to determine if liability should be imposed on a controlling entity or individual in order to avoid injustice. Plastipak Packaging, Inc. v. DePasquale, 75 Fed. App'x. 86, 87–89 (3d Cir.2003).

Veil-piercing is appropriate to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir.2001). A party seeking to pierce the corporate veil must "essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." Id. at 485. Courts must examine the following factors when deciding whether to pierce the corporate veil:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

Id. at 484–85. Ex. A § 15.3.2, ECF 1-3.

Here, Healy identifies the Pestronks as "the owners, members, principals, officers, and/or directors of" Post, "with the authority and power to make decisions for and on behalf of those entities." Am. Compl. ¶ 28. In doing so, Healy has named the actors and alleged their exclusive control over the finances of Post, the corporate entity. Healy asserts the Pestronks "directed and managed" Post's affairs and "made all material financial decisions on behalf of those entities," including whether to pay Healy. Id. ¶ 29. This is a sufficient factual basis to allege the Pestronks exerted enough control over the corporate entity to unilaterally marshal its decisions. See ASD Specialty Healthcare Inc. v. New Life Home Care Inc., No. 3:11-CV-068, 2011 WL 5984024, at *4 (M.D. Pa. Nov. 29, 2011).

On information and belief, Healy next alleges the Pestronks commingled corporate and personal funds, and siphoned corporate money into personal travel, dinners, and home repairs at their personal residences. Am. Compl. ¶¶ 31–32. Healy also asserts "Defendants failed to observe corporate formalities, including the keeping of meeting minutes and the taking of votes on corporate decisions, and failed to maintain adequate financial and accounting records." Id. ¶ 33.

These allegations do not contain specific instances of commingling, siphoning, or failing to observe corporate formalities. "Pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control,'" so long as the pleading is not boilerplate and the plaintiff supplies factual allegations making the claim plausible. McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)). It is undisputed that Defendants' corporate records and personal expenditures are peculiarly within their control. Still, as Defendants point out, Healy has coupled boilerplate factors of piercing the corporate veil—commingling, siphoning, failure to observe formalities—with broad categories of ways this could happen and no specific factual instances of misconduct. Healy asserts that Post failed to keep various records, but only takes it beyond a boilerplate recitation by listing types of corporate records that were not kept with no facts about when, where, or who was responsible. Healy asserts funds were siphoned and commingled by spending corporate money on personal travel, dinners, and home repairs, but does not supply amounts of money or specific instances of travel, dinners, or renovations. By relying on categorical examples of each factor, Healy's allegations reach slightly beyond boilerplate recitations, but skew toward speculative.

As evidence of undercapitalization, Healy points to the Post and CQSA's loan papers, where the Project lender acknowledged five overdue Healy pay applications totaling $1,170,147.13 and offered to pay them itself at closing. Id. ¶¶ 34–35, Compl. Ex. B ¶ 2. Based solely on this fact, it would be speculative to assume that the corporate entity was unable to pay its subcontractor as opposed to seeking a financing agreement for valid business reasons. Healy again does not explain how it follows that an offer to finance one obligation means an entire corporate entity is undercapitalized. Healy does not allege the obliged entity is insolvent and a

finding of undercapitalization based solely on a financing agreement "would expose nearly every company to the possibility of veil-piercing." Lieberman v. Corporacion Experiencia Unica, S.A., 226 F. Supp. 3d 451, 469 (E.D. Pa. 2016).

Pennsylvania courts have accepted similar veil-piercing theories, but with less speculative allegations. In Sugartown Worldwide LLC v. Shanks, Judge Kearney considered allegations that individual defendants used the corporate defendant for their personal benefit "as part of a shell game to hide assets available to satisfy a known creditor." 129 F. Supp. 3d at 207. There, the plaintiff's allegations were insufficient to "plead a commingling or undercapitalization theory" because the plaintiff only alleged the individual defendants made business decisions to frustrate a creditor's recovery without identifying personal use or combination of the monies. Id. at 206–07. But the plaintiff "specifically allege[d]" that the individual defendants "depleted [the corporate defendant's] assets to pay approximately $1.5 million to themselves," which sufficiently established a claim for siphoning. Id. at 207. Here, Healy has alleged conduct that points to commingling and undercapitalization, but only slightly beyond a boilerplate recitation and in speculative terms. The Complaint here does not contain a specific allegation of asset transfer, let alone the dollar amounts to identified personal accounts, as the plaintiff did in Sugartown to support a plausible allegation of siphoning.[3]

Similarly, the plaintiff in ASD Specialty Healthcare Inc. v. New Life Home Care, Inc., No. 3:11-cv-068, 2011 WL 5984024, at *1 (M.D. Pa. Nov. 29, 2011), alleged that an individual

---

[3] The other cases Healy cited to support its theory involved stronger claims of insolvency. See Eddystone Rail Co. v. Bridger Logistics, LLC, 2017 WL 3072250, at *3–4 (E.D. Pa. July 19, 2017) (denying motion to dismiss alter-ego and fraudulent-transfer claims where defendants allegedly moved assets out of the contracting entity, leaving it unable to pay); ASD Specialty Healthcare, Inc. v. New Life Home Care, Inc., 2011 WL 5984024, at *4 (M.D. Pa. Nov. 29, 2011) (allegations that the principal "siphons funds… for his own personal use," exercises total control, and that the entity is insolvent "are sufficient to withstand a motion to dismiss"), quoted in Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 510–11 n.16 (E.D. Pa. 2014).

defendant controlling shareholder "paid himself approximately $300,000 a year as [the corporation's] president and CEO," charged "$8,000 for the monthly rent on his Manhattan apartment and the payments on his luxury cars" to his corporate credit card, and "issued approximately $400,000 worth of checks to his attorney, a personal friend, without any invoices describing services rendered by the attorney." It also alleged that he personally benefitted by paying rent on the corporation's operating space to an entity he owned. Id. at *4. Again, Healy's Complaint is much more speculative and does not contain detailed facts about dollar amounts that were comingled and appropriated for personal benefit. However, Healy's allegations are slightly more specific than those Judge Robreno found insufficient in Chaleplis v. Karloutsos, 579 F. Supp. 3d 685 (E.D. Pa. 2022).

In Chaleplis, the plaintiff alleged that the corporate entity "(1) is owned by Karloutsos; (2) is operated and managed by [the individual defendant]; (3) has confused, commingled and intermingled its business assets and business operations; (4) failed to observe any corporate formalities; (5) has no corporate records; (6) is insolvent except for the funds misappropriated from [Plaintiffs]; (7) had any and all of its funds and/or [Plaintiffs'] funds siphoned away by [the individual defendant]; (8) was used to advance [the individual defendant's] own personal efforts to misappropriate [Plaintiffs'] funds; and (9) [the individual defendant] used [the corporate entity] to perpetrate fraud and conversion upon [Plaintiffs] as detailed [elsewhere in the complaint] while having absolutely no business operations or legitimate business purposes[.]" 579 F. Supp. 3d at 707. The court found that "[n]early all of the [Chaleplis] allegations are conclusions that are unsupported by any alleged facts." Id. Healy's allegations differ from these only insofar as they list categories of intermingling and failing to record that the Pestronks engaged in on information

and belief. Absent specific, material factual allegations, Healy's veil piercing claim leans toward speculation, on the razor's edge of plausibility.

Additionally, there is a procedural defect in the way Healy has alleged claims against the Pestronks. Veil-piercing "is not an independent cause of action." ITP, Inc. v. OCI Co., 865 F. Supp. 2d 672, 684 (E.D. Pa. 2012); see also SieMatic Mobelwerke GmbH & Co. KG v. SieMatic Corp., 643 F.Supp.2d 675, 683 (E.D.Pa.2009) ("[A]n attempt to pierce the corporate veil is not itself a cause of action, but rather a means of imposing liability on an underlying cause of action, such as a tort or breach of contract."). Healy argues Count V (veil-piercing) is meant to incorporate the preceding allegations and apply personal liability to the breach of contract, unjust enrichment, and CASPA claims. Opp'n at 12. At minimum, a plaintiff should identify in the complaint what specific claims are being brought against which specific defendants, as opposed to incorporating all preceding claims to see what sticks. In light of the substantive shortcomings previously discussed, the Court is not inclined to construe Count V as three individual liability claims[4] and instead will grant dismissal of the standalone count, with leave to amend so that Healy is "not otherwise precluded from pursuing this theory of liability in connection with its other claims." ITP, Inc., 865 F. Supp. 2d at 684.

## V. CONCLUSION

For the reasons stated above, the Pestronk's Motion to Dismiss will be **GRANTED**. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-3156 Healy Long & Jervin, Inc. v. CQSA Construction et al\25cv3156 Memorandum on MTD [ECF 54].docx

---

[4] See e.g., Motorola, Inc. v. Airdesk, Inc., No. 04-4940, 2005 WL 894807, at *2 (E.D. Pa. Apr. 15, 2005); Eddystone Rail Co. v. Bridger Logistics, LLC, 2017 WL 3045922, *3–4 (E.D. Pa. July 19, 2017) (denying motion to dismiss a complaint whose first count was captioned "Alter Ego").